O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ORALIA DE MONGE SEPULVEDA, | ) | NO. CV 06-08164-MAN |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

    Plaintiff filed a Complaint on January 10, 2007, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for disability insurance benefits ("DIB").  On
January 25, 2007, the parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(c).  The parties filed a Joint Stipulation on October 30, 2007, in
which:  plaintiff seeks an order reversing the Commissioner's decision
and directing the immediate payment of benefits or, in the alternative,

---

[1]    Michael J. Astrue became the Commissioner of the Social Security
Administration on February 12, 2007, and is substituted in place of
former Commissioner Joanne B. Barnhart as the Defendant in this action.
(*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security
Act, last sentence, 42 U.S.C. § 405(g).)

remanding the matter for further proceedings; and defendant seeks an order affirming the Commissioner's decision.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS AND DECISION

Plaintiff filed her application for DIB on December 4, 2002, alleging an inability to work since September 21, 2001, due to musculoskeletal and mental impairments.[2] (A.R. 18, 46-48.) Plaintiff's claim was denied initially and upon reconsideration, and on May 25, 2005, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Lawrence D. Wheeler ("ALJ"). (A.R. 670-90.)  On October 25, 2005, the ALJ denied plaintiff's claim (A.R. 18-27), and the Appeals Council subsequently denied plaintiff's request for review of that decision (A.R. 7-10).

In his written decision, the ALJ partially accepted the opinions of plaintiff's treating physicians and found that plaintiff "has the residual functional capacity ["RFC"] to perform the physical exertion and non-exertional requirements of work except for more than sedentary work, more than occasional climbing, stooping, balancing, kneeling, crouching or crawling, she must avoid working on uneven terrain, and she is limited to simple tasks and minimal contact with others." (A.R. 27.) Additionally, the ALJ found that plaintiff is "not restricted in neck

---

[2]    Specifically, the ALJ found that plaintiff has "severe lower back, bilateral knee, and left shoulder conditions, obesity, depressive disorder with anxiety and psychological factors affecting mental conditions, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (Administrative Record ("A.R.") 26, 27.)

movements" (A.R. 21), and the ALJ did "not find a need to restrict above shoulder level work" (A.R. 23).  The ALJ further found, based upon his partial acceptance of plaintiff's treating psychiatrist's opinions, that plaintiff has a "slight to less than moderate mental impairment based limitations in daily activities, moderate limitations in maintaining social functioning, slight to less than moderate limitations in concentration, persistence and pace and no episodes of decompensation." (A.R. 25.)

The ALJ determined that plaintiff is unable to perform her past relevant work as a pre-school teacher, but based upon the vocational expert's testimony and plaintiff's RFC, she is able to perform work as an addresser and lens inserter.  (A.R. 27.)  Therefore, the ALJ concluded that plaintiff was not under a disability at any time through the date of his decision.  (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003)(citation omitted).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v.

Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r., 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

///

///

4

**DISCUSSION**

Plaintiff alleges two issues: (1) whether the ALJ erred in his assessment of plaintiff's physical RFC; and (2) whether the ALJ erred in his assessment of plaintiff's mental RFC.

**I.     The ALJ Failed To Provide Specific And Legitimate Reasons Supported By Substantial Evidence For Rejecting Portions Of Plaintiff's Treating Physicians' Opinions Regarding Plaintiff's Physical RFC.**

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Even where the treating physician's opinions are contradicted, "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

In the present case, the ALJ clearly set forth specific reasons for rejecting portions of plaintiff's treating physicians' opinions. However, these reasons were neither legitimate nor based upon substantial evidence. Accordingly, the ALJ's failure to provide specific *and* legitimate reasons, *based upon substantial evidence*, constitutes error.

In his decision, the ALJ rejected portions of the November 2003 assessment of plaintiff's treating orthopedist, Steven Nagelberg, M.D. Specifically, the ALJ rejected Dr. Nagelberg's opinion that plaintiff

1   has "manipulative (or related environmental) restrictions . . . [and]
2   that [plaintiff] is restricted to less than 2 hours of 8 hours standing
3   and/or walking (albeit he indicates that that [sic] she does not require
4   an assistive device) or that she must have a job that permits shifting
5   of positions at will from sitting, standing or walking, or may require
6   unscheduled breaks." (A.R. 22.)  In rejecting these limitations, the
7   ALJ cites the following reasons:  (1) plaintiff's ability to engage in
8   daily activities suggests that Dr. Nagelberg's assessment of plaintiff's
9   functional capacity is unduly limited; (2) Dr. Nagelberg had not
10  examined plaintiff since May 2003, which was prior to plaintiff's right
11  knee surgery; and (3) there is opposing opinion evidence from one-time
12  consultative examiner, Raymond Lee, M.D.  (A.R. 21-22.)

13

14      The ALJ improperly relies on plaintiff's ability to engage in
15  limited daily activities to justify his rejection of Dr. Nagelberg's
16  opinion.  It is well-settled that "disability claimants should not be
17  penalized for attempting to lead normal lives in the face of their
18  limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).
19  The ALJ states that plaintiff's daily activities "reflect that she does
20  household chores, including cooking and preparing meals, shopping and
21  other activities during which she is on her feet." (A.R. 22.)  However,
22  it is clear that "many home activities are not easily transferrable to
23  . . . the more grueling environment of the workplace, where it might be
24  impossible to periodically rest or take medication." Fair v. Bowen, 885
25  F.2d 597, 603 (9th Cir. 1989).  The ALJ's reliance on plaintiff's
26  performance of simple self-care duties, to support his rejection of Dr.
27  Nagelberg's opinion, constitutes error.

28

1    Additionally, while it is true that Dr. Nagelberg's opinions are
2  based on an examination of plaintiff prior to her right knee surgery, *so
3  are Dr. Lee's opinions.*[3]  As a one-time consultative examiner, Dr. Lee's
4  opinion is clearly entitled to less weight than the opinion of Dr.
5  Nagelberg, who regularly examined and treated plaintiff over a year-long
6  period.  *See* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.
7  1989)(treating physician opinions are entitled to great deference).  As
8  neither Dr. Nagelberg nor Dr. Lee examined plaintiff after her right
9  knee surgery, the ALJ's reliance on Dr. Lee's "opposing opinion
10  evidence" to support his rejection of portions of the opinions of Dr.
11  Nagelberg and Dr. Hay, as discussed below, constitutes error.

12

13    The ALJ also improperly rejected portions of the opinion of
14  plaintiff's treating orthopedic surgeon, Phillip Hay, M.D., as set forth
15  in his November 2003 and May 2004 assessments.  (A.R. 614-17, 618-33.)
16  To diminish the weight accorded to Dr. Hay's opinions, defendant
17  contends that Dr. Hay was not plaintiff's treating physician, but an
18  examining physician for the purpose of plaintiff's worker's compensation
19  case.  In fact, Dr. Hay consistently and routinely treated plaintiff for
20  her work-related injuries from May 22, 2003, through May 1, 2004.  (A.R.
21  618-38.)  For all intents and purposes, Dr. Hay acted as plaintiff's
22  treating physician, and his opinions should have been weighted
23  accordingly.

24

25

26  [3]    Prior to completing his November 21, 3003 Physical Residual
    Functional Capacity Questionnaire, Dr. Nagelberg had last examined
    plaintiff on May 7, 2003. (A.R. 505.)  Dr. Lee performed his internal
27  medicine examination on plaintiff on March 14, 2003.  (A.R. 264-68.)
    Plaintiff underwent right knee surgery on October 21, 2003.  (A.R. 503-
28  04.)

1    Critically, Dr. Hay, unlike both Drs. Nagelberg and Lee, examined

2    plaintiff following her right knee surgery, opined that her prognosis

3    was "guarded," and diagnosed her with internal derangement of right

4    knee, patellar femoral syndrome of right knee, chondromalacia patella,

5    and synovitis of right knee. (A.R. 614, 629.) Dr. Hay further opined

6    that, as of May 2004, plaintiff's knee and lower back disabilities

7    precluded: prolonged walking, prolonged standing, repetitive bending of

8    knees, kneeling, squatting, heavy lifting, prolonged weight bearing,

9    climbing, walking on uneven ground, crouching, crawling, pivoting, or

10   other activities involving comparable physical effort. (A.R. 631.) Of

11   these limitations, the ALJ adopted as part of his RFC conclusion only

12   "avoidance of working on uneven terrains." (A.R. 19.)

13

14   It appears that, in seeking to diminish the significance of

15   plaintiff's right knee limitations, the ALJ may have overstated the

16   record regarding the extent to which plaintiff "respond[ed] positively

17   . . . to surgery on her right knee. (A.R. 20.) Although plaintiff

18   testified at the hearing that her right knee "improved" after the

19   surgery, plaintiff's testimony is somewhat muddied on this issue, and it

20   is clear from both her testimony and Dr. Hay's records that significant

21   problems with her right knee persisted. (A.R. 679-80.) In his

22   assessment of plaintiff's right knee condition post-surgery, Dr. Hay

23   referred to two "progress reports," dated November 11, 2003, and January

24   5, 2004, that were authored by the orthopedic surgeon who performed

25   plaintiff's right knee surgery, but which are not included in the

26   present record. (A.R. 623.) As it is likely that these post-operative

27   reports may shed light on the extent to which this surgery alleviated

28   her right knee problems, the ALJ should have attempted to procure them,

and his failure to do so constitutes error.

In addition, the ALJ improperly rejected Dr. Hay's opinion that plaintiff should be restricted from engaging in "prolonged forward head position and above shoulder work." (A.R. 22-23.) The ALJ's primary reasons for rejecting Dr. Hay's opinion regarding plaintiff's upper extremity limitations are that: (1) it is "somewhat inconsistent with that of Dr. Nagelberg"; and (2) plaintiff's "denial" of upper extremity limitations to Dr. Lee. (*Id.*)

The ALJ's assertion, that Dr. Hay's opinion regarding limitations on plaintiff's use of her upper extremities is inconsistent with that of Dr. Nagelberg, is belied by the record. From May 2002, through May 2003, Dr. Nagelberg regularly treated plaintiff for work-related injuries sustained to her neck and shoulders. (A.R. 319-53.) Not only did Dr. Nagelberg consistently report that plaintiff suffered from neck and shoulder pain, but also the objective physical examination findings clearly revealed limitations in plaintiff's neck and shoulders. (A.R. 319-53, 505-62.) The ALJ ignored Dr. Nagelberg's examination findings of tenderness and positive impingement sign on the left shoulder, tenderness of the lumbar and cervical spine, positive Tinel's signs[4] at the left elbow, positive Tinel's sign and positive Phalen's test[5] for

_____

[4]     Tinel's sign is a cutaneous tingling sensation produced by pressing on or tapping the nerve trunk that has been damaged or is regenerating following trauma. *See* TABER'S CYCLOPEDIC MEDICAL DICTIONARY, p. 2192 (20th ed. 2005).

[5]     Phalen's test is a maneuver used in the physical diagnosis of carpal tunnel symptoms. The test is positive when wrist flexion produces numbness in the distribution of the median nerve. *See* TABER'S CYCLOPEDIC MEDICAL DICTIONARY, p. 1650 (20th ed. 2005).

carpal tunnel syndrom on the left hand, and decreased sensation to pinprick in the small finger and thumb of plaintiff's left hand. (A.R. 319-20, 325, 330, 510, 545.) Consistent with Dr. Nagelberg's findings, Dr. Hay's physical examination of plaintiff revealed cervical lordosis, scoliosis, spasms, decreased range of motion, decreased tendon reflexes, and diminished sensation to pinprick, left more than right. (A.R. 624-25.) Accordingly, the ALJ's reliance on any purported inconsistencies between the opinions of Drs. Nagelberg and Hay, to justify the ALJ's rejection of Dr. Hay's opinion regarding plaintiff's upper extremity limitations, is not based upon substantial evidence and constitutes error.

Additionally, in support of his rejection of Dr. Hay's opinion that plaintiff could not perform prolonged forward head position and above shoulder work, the ALJ impermissibly relies on plaintiff's purported "denial of such symptoms to Dr. Lee." (A.R. 23.) The fact that plaintiff's documented "chief complaints" were low back pain and right knee pain does not negate plaintiff's consistent complaints of neck and shoulder pain to her treating physicians, and it certainly does not mean that plaintiff affirmatively denied any upper extremity pain to Dr. Lee. (A.R. 264-68.) Indeed, it is unclear whether plaintiff was asked specifically whether she had any upper extremity musculoskeletal complaints. Although Dr. Lee reports that plaintiff "denies any other symptoms," such as "chest pain or shortness of breath, nausea or vomiting, fever or chills, abdominal pain, or significant changes in weight or appetite," he nonetheless diagnoses plaintiff with "decreased sensation along the lateral aspect of the left arm from shoulder to the left hand, uncertain etiology. We would defer to appropriate specialist

for further evaluation and management." (A.R. 264, 267.) In view of Dr. Lee's express deference to the appropriate specialist for further evaluation, the ALJ should have inquired further regarding the extent to which plaintiff's upper extremity limitation(s) may impact her ability to work.

Further, the ALJ improperly rejected Dr. Hay's opinion in his November 2003 assessment that plaintiff should be limited to "a less than sedentary work capacity, with indication that [plaintiff] would miss work 3 or more days a month, can never engage in postural activities, would need to take unscheduled breaks, etc." (A.R. 23.) The ALJ based his rejection of Dr. Hay's opinion on the fact that it is purportedly "inconsistent with his 2004 report and is not supported by this earlier narrative report or by other evidence." (*Id.*) However, this rationale is not supported by substantial evidence. In fact, the ALJ fails to identify any inconsistencies whatsoever between the two reports and fails to provide any legitimate reasons for rejecting Dr. Hay's opinions regarding plaintiff's physical limitations. The ALJ's failure to do so constitutes error.

On remand, plaintiff's physical limitations and the extent, if any, to which they impact her ability to work, should be assessed on a fully developed record in accordance with the appropriate legal standards.

///

///

11

**II.  <u>The ALJ Failed To Provide Specific And Legitimate Reasons Supported</u>**
**<u>By Substantial Evidence For Rejecting Portions Of Plaintiff's</u>**
**<u>Treating Physician's Opinions Regarding Plaintiff's Mental RFC</u>.**

In his decision, the ALJ rejected certain findings of plaintiff's treating psychiatrist, Thomas Curtis, M.D., without providing specific and legitimate reasons for doing so.  Dr. Curtis' 21-page report contains a thorough analysis of, and test results reflecting, plaintiff's psychological conditions, as well as a comprehensive review of plaintiff's medical records.  In his report, Dr. Curtis opines as to the impact plaintiff's present mental functioning may have on her ability to engage in sustained, full-time work.  (A.R. 662.)  The ALJ asserts that plaintiff's mental limitations are "somewhat greater than [those] assessed by Dr. Bagner, but less severe than Dr. Curtis suggests." (A.R. 25.)  Although the ALJ claims that he "has considered the possibility that [plaintiff] has materially worsened since Dr. Bagner's March 2003 report or since August 2004," the ALJ nonetheless concludes that plaintiff's mental limitations are not as severe as Dr. Curtis opines.  (A.R. 25.)  As the ALJ concedes that Dr. Bagner's consultative psychiatric evaluation was "unimpressive," the ALJ should not have disregarded Dr. Curtis' report without setting forth legally sufficient reasons for doing so.  (*Id.*)

The ALJ's primary reasons for rejecting portions of Dr. Curtis' opinions[6] -- specifically the opinions set forth in Dr. Curtis' 2005

---

[6]   In October 2003, Dr. Curtis classified plaintiff's mental restrictions as follows: "moderate" ability to understand and remember short, simple instructions; "moderate" ability to carry out short,

12

report -- are as follows:  (1) Dr. Curtis' 2005 report was "likely done to attempt to qualify [plaintiff] for benefits" (A.R. 25); (2) "Dr. Curtis's assessments in narratives generally appear to overstate [plaintiff's] emotional overlay," as plaintiff "did not emphasize her mental problems" at the hearing (*id.*); (3) the 2003 assessment of consultative examiner, Ernest Bagner, M.D.[7], "seems to better describe reality than does Dr. Curtis' most recent report, in light of [plaintiff's] daily activities, overall presentations, and all other factors" (*id.*); and (4) plaintiff reports that she has benefitted from psychotherapy and psychotropic medications (A.R. 24).

---

simple instructions; "marked" ability to understand, remember, and carry out detailed instructions; "marked" ability to make judgments on simple work-related decisions; "marked" ability to interact appropriately with the public; "moderate" ability to interact appropriately with supervisor(s), co-workers; "moderate-to-marked" ability to respond appropriately to work pressures; and "marked" ability to respond appropriately to changes in a routine work setting.  (A.R. 563-64.)  In August 2004, Dr. Curtis assessed a "slight-to-moderate" limitation in all eight of the rated functions and concluded that "the psychological test results confirmed residual abnormal levels of anxiety, somatization, hopelessness and depression with fatigue, low self-esteem and feelings of sadness."  (A.R. 582, 586-87.)  These eight rated functions assess one's ability to:  comprehend and follow instructions; perform simple and repetitive tasks; maintain work pace; perform complex and varied tasks; relate to other people; influence people; generalizations, evaluations or decisions; and accept and carry out responsibility.  Finally, in June 2005, Dr. Curtis rated most of the previously identified eight functions as "moderately impaired," with a "slight-to-moderate" rating in plaintiff's ability to comprehend and follow instructions, and to perform simple and repetitive tasks.  Dr. Curtis further opined that plaintiff had a "marked" degree of impairment at about 60% standard level, and she had worsened.  (A.R. 659-61.)

[7]     Dr. Bagner diagnosed only a non-specific depressive disorder.  He assessed "zero to no limitations" in [plaintiff's] ability to interact with supervisors, peers and the public, to handle normal stresses at work, to maintain concentration and attention, and to complete simple tasks.  He assessed "mild" limitations in her abilities to complete complex tasks and to complete a normal workweek without interruption.  (A.R. 25, 260-63.)

Plaintiff contends, and the Court agrees, that the ALJ "improperly and unfairly rejected the report from Dr. Curtis, dated June 16, 2005 (AR 643-664), submitted post-hearing on the basis of his unwarranted speculation that 'this report, which was completed only a few days after the hearing, was likely done to attempt to qualify [plaintiff] for benefits' (AR 24-25)." (Joint Stip. at 19.) The ALJ's assertion lacks foundation and is not a legally sufficient ground upon which to reject a treating doctor's report. *See* Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995)("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."); *see also* Ratto v. Sec'y., 839 F. Supp. 1415, 1426 (D. Or. 1993)(an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits). While the ALJ "may introduce evidence of actual improprieties," no such evidence exists here. Lester, 81 F.3d at 832. Thus, the fact that Dr. Curtis' report was prepared in connection with plaintiff's worker's compensation case is of no moment, and Dr. Curtis' report constitutes substantial evidence regarding the extent to which plaintiff's mental impairment may have worsened over time. Accordingly, the ALJ's rejection of Dr. Curtis' 2005 report on this basis is reversible error.

Further, the ALJ also impermissibly rejected Dr. Curtis' "assessments in narratives" on the ground that they "overstate[d] plaintiff's emotional overlay," because plaintiff "did not emphasize depression or anxiety at the hearing." (A.R. 25.) This stated reason is factually inaccurate and improperly minimizes the severity of plaintiff's mental impairments. In fact, at the hearing, plaintiff testified to having anxiety attacks and symptoms of depression, such as

14

lack of sleep, fatigue, and forgetfulness.  (A.R. 675-76.)  Plaintiff further testified that she was taking medications for depression prescribed by Dr. Curtis and was attending therapy once a week.  (A.R. 676, 678.)  The ALJ's assertion that plaintiff did not "emphasize" her mental conditions borders on a mischaracterization of the record and is not a legally sufficient reason to minimize the severity of plaintiff's mental limitations or reject the opinions of Dr. Curtis.  If the ALJ required further, more specific details regarding the extent of plaintiff's mental impairments, then the ALJ should have asked further, more specific questions.

In addition, the ALJ impermissibly relied on plaintiff's ability to "do household chores, shop and cook" to support his rejection of Dr. Curtis' opinion.  (A.R. 25.)  It is well-settled, however, that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.  It would be highly inappropriate and unreasonable to require plaintiff to "vegetate in a dark room" in order to be deemed eligible for benefits.  Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987).  Plaintiff's efforts to care for herself do not translate into an ability to engage in substantial gainful activity and do not constitute a valid reason for rejecting Dr. Curtis' opined limitations.

Finally, the ALJ impermissibly relied on "evidence showing that [plaintiff] has benefitted from counseling and psychotropic medications" to reject Dr. Curtis' opinion regarding the severity of plaintiff's mental limitations.  (A.R. 25.)  It is important to note that, since her alleged onset date, plaintiff has been taking medication for her

physical and mental impairments.  On September 21, 2001, plaintiff was prescribed Vioxx and Paxil (which was later changed to Celexa) for continued pain and symptoms of anxiety and depression.  (A.R. 647.)  In 2003, plaintiff reported to Dr. Bagner that she was taking the following medications:  Alprazolam, Celexa 20 mg BID, Sonata, Vioxx, and Motrin.  (A.R. 261.)  As of June 16, 2005, Dr. Curtis reported that plaintiff had "recently taken Celexa and BuSpar."  (A.R. 651.)  Although plaintiff reported that she benefitted from participating in therapy and taking medication, she never reported that she was cured.  Plaintiff should not be penalized for seeking treatment and taking medication for her impairments and the ALJ's attempt to do so, as a justification for rejecting Dr. Curtis' opinion, constitutes error.

**III.  <u>Because The ALJ's Findings Regarding Plaintiff's Ultimate RFC Must Be Reconsidered, Additional Vocational Expert Testimony Likely Will Be Required</u>.**

Based on the fact that the ALJ's findings regarding plaintiff's physical and mental impairments must be reevaluated on remand, plaintiff's ultimate RFC assessment may change.  An ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations, such as mental limitations.  *See* <u>Reddick</u>, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert).  If the vocational expert's testimony is not based on a claimant's complete set of limitations, then it has no evidentiary value.  *See* <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-24 (9th Cir. 1987)(in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the

claimant's limitations).

**IV.   Remand Is Required.**

Where, as in this case, there is error in the ALJ's findings and the record may require further development, remand is appropriate to allow the ALJ the opportunity to remedy the errors and inadequacies. *See* Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)(when there are outstanding issues that must be resolved before the question of disability can be determined, remand is appropriate); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 19, 2008

                                        _____/s/_____
                                        MARGARET A. NAGLE
                                UNITED STATES MAGISTRATE JUDGE